Please all rise. Hear ye, hear ye, hear ye. This Honorable Appellate Court for the Second Judicial District is now back in session pursuant to adjournment. The Honorable Donald C. Hudson will present. Thank you. Please be seated. All right, good morning again. Mr. Marshall, please call the last case of the morning. Your Honor, this case 2-16-0954. Jamie Bedolla v. Appellant v. Mitchell v. Lauber. Mr. Hudson, Mr. Stevens, and Mr. Black. Everyone on behalf of the defendant's company, Mr. Daniel, and Mr. Petriello. All right, thank you. Mr. Black on behalf of the appellant, you may proceed. Your Honor, counsel, may it please the court. The jury in this case made two distinct findings. By signing verdict form B, the jury agreed that the defendant's negligence approximately caused damages to the plaintiff. By awarding zero dollars, the jury found that the defendant did not cause an injury to the plaintiff. Those are two inconsistent, irreconcilable findings. Well, in this case, though, couldn't it be that they found approximate cause, but felt that he had a preexisting condition, which did not, in this accident, did not exacerbate that condition? In that, so if they found that, the right verdict would have been C, because if they found that they didn't, if the defendant didn't aggravate the preexisting condition, the right verdict would have been a verdict form C, a verdict in favor of the defendant. Now, the case law recognizes two different types of inconsistent verdicts. The first, well, I'll start with this. There's an illogical but irreconcilable verdict, and there's a illogical reconcilable verdict. And I'll start with the reconcilable, because that's addressed in Brennan v. Sasha, which was discussed by the trial court and is cited in our brief. That's an auto case where the plaintiff sued the defendant, but the defendant cross-claimed. Now, on appeal to the Supreme Court, the issue, the jury ultimately found that there was, that neither, it ruled not guilty on the plaintiff's claim, and it ruled not guilty on the cross-claim. So the Supreme Court recognized, you know, that's not a logical, that's not a logical verdict. Can you give me one second? Yes. Just one second. Are we supposed to have Janine Farrell in here? No, no, she's not here. She's not here? Okay. All right, I'm sorry. That was my fault. I just noticed that. Go ahead. Okay. So they found that the plaintiff's claim, they denied the plaintiff's claim. They found the defendant not guilty, and they found the plaintiff not guilty on the cross-claim. Now, that seems illogical because somebody has to be responsible for the crash. And so in analyzing this, the Supreme Court said, well, what really happened is that the jury could have found that neither party met their burden of proof. And so while it seems illogical, it's a reconcilable verdict. The cases that we cite in our brief, Theophanis and Chimino, as well as others, are dealing with a different situation where the jury found that the plaintiff met their burden, but that the jury also made an affirmative finding that there was no injury. Well, I think it's the illness and not the parse words. And I think close reading of that indicates that there was deliberations. The jury sent a note out, and the court found that the verdict was a result of a compromise. I mean, that's in the mix of the illness. This is not a compromised verdict. There was no note sent out by the jury during deliberations, was there? There was no. They were confused about anything? No, there was no note sent. In which case are you referring to, the Theophanis case? Yes. Yes. Let me ask you this. I think you started to correctly cite the law, but there's some other fundamental principles that apply, as I understand it. In review, we're supposed to look at what happened with the deferential standard. That is, we're supposed to exercise all reasonable presumptions in favor of the verdict, and the verdict will not be found legally inconsistent unless it's absolutely irreconcilable under any theory. So what I want to do is to confront you with this possible scenario that I think was alluded to by the trial judge in the post-trial motion. Couldn't the jury have found either that the accident was not the cause of the plaintiff's injuries or that the plaintiff suffered no injuries as a result of the accident, even if the defendant was at fault? Why couldn't there be a reasonable hypothesis of what the jury was thinking when they returned these verdicts? So I think that there's multiple hypotheses. The ones that you've just stated are hypotheses. I mean, I'm not sure that we have evidence that that occurred. And you mentioned that there's no evidence of a compromised verdict, but there's also no evidence that the other hypotheses occurred. Well, you've got Bernstein, but don't you have a basis in the evidence? Wasn't Bernstein the defense expert basically testified that he had this preexisting condition, there was no new injury, et cetera, et cetera? So why could the jury believe that? Couldn't they have arrived at this verdict? Yeah, the defendant was at fault, but there was no injury. There was no damage caused. So, well, part of our motion is that the verdict is against the manifest way of evidence. But Dr. Bernstein specifically testified that there could have been no evidence that there wasn't at least an aggravation of preexisting injury. Dr. Bernstein testified specifically, I did feel, and this is a quotation, I did feel that he could have had an aggravation causing a temporary increase in pain complaints. And I felt after six months there was no further treatment that was necessary for him for his low back. So there is no expert testimony that there wasn't at least some aggravation. Now, going back to whether or not they could have found that there was no injury but liability, that's possible. Isn't it? The other possibility is that there was a dispute amongst the jurors and that there was, and that they decided to make a compromised verdict. What we know for sure is that they did not follow the instructions. Perhaps they misunderstood the instructions. I think that any of those possibilities is reasonable. And the case law. Well, then why would it mandate a reversal? Because you have the burden on appeal. I mean, you know, if in fact one of those scenarios was correct, one of which would indicate that the jury found there was no injuries and even if there was liability, there was no damage to the plaintiff, you know, if that's a reasonable hypothesis, then why would your argument carry the day? It's that thing. The jury made two findings. The case law discusses this in terms of the reason this is wrong and the reason that it's a really bad thing is because it's not possible to tell what the jury was going to do. If you look at the Theophanis case, and I know there was a question there, but if you look at it, what the court ultimately says is that, you know, there's no real way of telling exactly what was going to happen. What I brought is that there were two distinct findings. There was an affirmative finding that the defendant caused plaintiff's injuries and an affirmative finding that the defendant did not cause plaintiff's injuries. What was the medical expenses? The medical expenses were, I think, around $24,000. And there was a motion eliminated by the plaintiff to keep those out. We did not submit medical bills to trial. Okay. So then we get Bernstein's testimony that he didn't sustain any kind of an injury. There's no evidence of any monetary damages. So the jury, okay, so the jury, they could find the defendant was 60 percent responsible for the accident. Okay. You're alleging the jury found the plaintiff proved each element of the claim, duty, breach, causation, and damages, but mistakenly failed toward damages seems to be what you're saying. However, couldn't they find there was an accident in everything else? Or they found either the accident was not the cause of the plaintiff's injuries or that he suffered no injuries. If the jury concluded that it was either not the cause or there was no injuries, why are these verdicts legally inconsistent if the jury believed that scenario? And don't tell me there's other possible scenarios because that's not the standard. We're not supposed to search out the record. That is a plausible hypothesis, so tell us why that is not a plausible hypothesis. I don't mean to reiterate, but Dr. Bernstein did testify that there was physical therapy in the six months, and that's what Dr. Bernstein was talking about in the six months. But didn't Bernstein also indicate maybe the employment was the cause? Isn't that somewhere in the evidence that it wasn't caused by the accident at all? Maybe the jury seized on that. I understand, but Dr. Bernstein admitted that there was at least an aggravation. Causing a temporary increase in pain. In pain. And there's no evidence that the defendant put forth, expert or otherwise, that that didn't happen. But what about if the jury didn't believe the plaintiff at all? They didn't think he was credible. They could have found that he was not credible, but that's not. They should have sent them filled out C. Well, absolutely they should have filled out C, because if they didn't believe he had damages, the right verdict for them to fill out is C. If they did believe he had damages, it's B or A. But ultimately they chose B. I can't say we didn't bring academics from the jurors.  But the fact is that this is two findings that are directly inconsistent. And if you look at that, the Kleist case is an interesting case. Yeah, I was just going to ask you to distinguish that case. I will. And it's actually distinguished by both the Theophanes Court and the Cimino Court. And I want to focus on two different issues in that case. One, there were multiple defendants. And the Theophanes Court and the Cimino Court both recognized that the jury properly assessed damages against every other defendant in that case. And what that told them was that the jury understood how to assess damages. The second point is that there was a jury question, and the jury question asked whether the jury had to award money damages if it found a party negligent. And the court replied no. Now, that extraneous evidence, the evidence that surrounds the inconsistent verdict, allows the court to push it into that category. Without that extraneous evidence, you're left with an inconsistent verdict. You're left with two conflicting findings that cannot be reconciled. Again, tell me what medical expenses were submitted to the jury. What was the dollar amount? We did not submit medical expenses. We were seeking pain and suffering and loss of a normal life. No showing of any medical expenses? Correct. So how could it be? And I know what your response is going to be. I mean, I think if you're hanging your hat on, they filled out the wrong jury verdict if this is what they wanted to achieve. I mean, didn't they speak clearly, though, that they didn't feel that the plaintiff in this case should have received any monies, regardless of the fact that they filled out the wrong jury form? You have a defendant who had a preexisting condition who, by his occupation, can injure his back, and you submitted no medical expenses to the jury. So I see where you're coming from. I will note that there's no mention of medical bills or specials in the Theophanis case. Pain and suffering, there's no evidence indicating that he did not suffer pain and suffering. Loss of normal life, at the very least, we have the six months of physical therapy he went through. There's inherent loss of normal life at attending and participating in physical therapy in a crash that was not your fault. There's loss of a normal life there, regardless of whether or not there's hard specials. What about if the jury found that the defendant caused the accident, but the accident wasn't the cause of his injuries? Is that possible? Could a jury do that? So if they found that that was the case, plaintiff did not meet his burden. They were instructed to find, for the plaintiff, if he proved, you know, in the instructions, he had to prove that the defendant approximately caused his injuries. Right. And what if the jury concluded that the accident had nothing to do with his injuries? Then verdict form C is there, is the only option they have, because plaintiff did not meet his burden. Well, she alluded to it. So it has to be a verse where maybe the jury picked the wrong verdict form, but the verdict was not legally, logically inconsistent. There was a scenario that would allow them to make that finding, correct? Yes, I believe you're right on this, and I understand your point. And I want to backtrack to a comment you made earlier. The case law, it's a de novo review of whether or not this verdict was inconsistent. I don't know that we have to prove more likely than not that it was a compromise verdict. The fact remains is that the case law focuses on the fact that it's the unknowability. It's not being able to know what the jury did. But that's not the test. The standard view is that we have to arrive at a decision where we look into the jury's mind. The question is, is there a scenario, a reasonable hypothesis that would explain this verdict? And if they felt there was an accident that had nothing to do with his injuries or damages, wouldn't that be a plausible way for them to find it? Did they have to find in every case that because somebody caused an accident, the injuries were the result of the accident? They don't have to find that, do they? They do not. And I think the distinction is that if you look at it, like, yes, is there a plausible way to make this verdict, to make it stand? Right. I don't think that that's actually the issue here. I think the issue is that — You're saying in Rod Steen's testimony that can't be plausible. Well, one, yes. But I think even without his testimony, there's nothing to show that that — and this is — the case law is fairly clear on this, that if there's the inherent conflict, if there's the conflict between not — if there's one possibility that's just as likely as a second possibility — may I continue just briefly? Yes. If there's one possibility that's just as likely as another possibility that's just as likely as another possibility, then the verdict is inherently inconsistent and it's irreconcilably inconsistent. And that's because there's — the Pleist case, and I think it's an interesting case because I think it shows what's necessary to break this free of an inconsistent verdict. And that's more — that's evidence showing, okay, well, it's not just possible that the jury may have done one of these three things, and we'll pick one out of the three, but it's actually more likely because the jury had given evidence that this is what they were going for. Can you — One more question. What did verdict form C say? It's not in the appendix. I believe it's we need the jury to find a defendant not guilty. Thank you. Thank you very much. Thank you very much. You have the opportunity to address the Court again and above. Mr. Trill, you may proceed. Thanks for having me. You may proceed. Okay, thank you. Good morning. May it please the Court. This certainly was somewhat of an unusual verdict in that we had a finding for the plaintiff with zero dollars in damages. Fortunately, it's not so unusual that there's not law up there to guide us. There is law to guide us, and I'm not going to recite the black letter law, Your Honor. You sort of touched on it from your questioning. But this Tedeschi case tells us that there's a very, very high standard for finding a jury verdict irreconcilably inconsistent. And as Your Honor was touching on, a jury is not inconsistent if any reasonable hypothesis supports it. And here there was plenty of basis for the jury to find that this man was — the plaintiff was not injured or that his preexisting conditions were the cause of the symptoms. Well, as I was trying to summarize, then, what was the reasonable hypothesis that it's not inconsistent? Sure. Dr. Bernstein, in his testimony, reviewed — unlike the other treated physicians, he had the benefit of the entire array of medical records, and he was aware of the fact that this was a man who — this heavy-duty union plumber who had a history of preexisting back conditions, back treatment, back symptoms, getting prescription medications. And even within eight months prior to this accident, he — there was radiology studies done within a few months of this accident which show all types of degenerative conditions in an L5-S1 spondylolisthesis, which is one vertebrae you can push forward over another. He said that these preexisting — and all of them preexisted. None of them were caused by the accident. These were the source of his ongoing complaints of pain, in addition to his work as a union plumber. And Bernstein also opined, didn't he, that the plaintiff was receiving low-back treatment before and after the accident? Yes. He was already receiving treatment to his back. Yes. But even though he was receiving treatment to his back, an accident could have increased the injury and exacerbated the condition, could it not? Well, it — it — It could have aggravated it, causing temporary increase in the pain. Didn't he testify to that? That's exactly what he testified to. But it's interesting. He said it could have caused a temporary increase in pain. He's not saying that it did cause an increase in pain. And this is where I would bring in this Snover v. McGraw case, which talks about subjective versus objective complaints and evidence of injury. And if the — if it's a purely subjective injury, such as an increased complaint of pain, the jury is free to disregard it. On the credibility issue, right? On the credibility issue. And, you know, the jury can pick out credibility issues from context. It became clear to the jury that why was this man in this motor vehicle accident? You know, three days later, he's in a new orthopedic physician's office, and this was clear in the records. He specifically asked, did you have preexisting complaints of pain, and did you ever get treatment for that? And he denied that. And he was impeached, right? He was impeached, yes. And so I think the jury just didn't believe the subjective complaints. What is your — what is your response to your opponent's argument with respect to the verdict form? Is — did he — did the jury incorrectly fill out the wrong — the wrong verdict form? They did. It's a technical defect. And so my response is that this Manders v. Police case and the cases I cited do reference that every effort should be made to discern the intent of the jury. And if it can be discerned, then the jury form should be molded to conform to the jury's intent. So, in other words, and that was in my next question later when he argued, is the fact that they perhaps filled out the wrong form, does that in and of itself, if so facto, mandate a reversal with regard to any other consideration? Absolutely not. You're saying no? Absolutely not. As long as you have that plausible basis. Right. Right. If the — if this verdict — If that was the case, you know, who's he supposed to be talking to? The argumenter, right? Right, exactly. The case law tells us we should see if we can discern the intent of the jury. Without expanding the verdict form. Right. Okay. The verdict form C says the defendant's not guilty. Yes. Basically. Yes. But verdict form B that they filled out says that the defendant was more than 60 percent or 60 percent at fault. Yes. Could you not say verdict form B was still correct if even if he was at fault, they didn't believe the plaintiff? I think that's exactly what the jury intended. They wanted to say we don't think the man is injured. We've said that six different times in each of the subcategories. But he could still have been negligent. Right. Well, we want to make the point that not only is he not injured, we think he's partially at fault at causing this accident. So this intent is clear. But I do believe — I think if we technically read through the jury instructions, they should have said if you think he's not — If he's not injured, you should use verdict form C. In argument, wasn't it made clear to the jury in argument what verdict form they should select if they're going to find no injury? The — one learns something new on every trial. And going forward, I will certainly tell the jury, use A, B, or C, or this is what they mean. I didn't do that in closing argument. And, you know, I should have. But I still think we're reluctant enough to know exactly what the jury intended. Okay. Anything further? I think that's enough. Thank you. Okay. Thank you. Mr. Blucher, you may address the court in rebuttal. I looked at the Theophanis case again. I understand that there's evidence of a compromise. Right. If I have a question they're asking, they seem confused. But the court is saying — the defendant is wanting them to say they used the wrong verdict form. The court is saying here, by contrast, another reasonable hypothesis the defendant suggested could explain the verdict. After hours of deliberation, the jurors finally reached a compromise. They're not saying more likely than not that this happened. They're saying that these two possibilities exist. One is not more likely than another. And the inherent in that is the problem with the verdict, because there's no explanation for why this happened. There's no — and the Pleist case shows that there's — if there's extraneous evidence that shows that, yes, the jury, you know, they understood how to assess damages. We don't know. I mean, they were instructed. They clearly didn't use their instructions. They could have misunderstood the instructions. It could have been a compromised verdict. Or, as defense counsel indicates, they could have found that the proximate cause was lacking. Or they could have found that with no medical expenses, they didn't believe that he incurred any injuries. As a result of the — And the fact — as a result of the accident and the fact that he lied to the doctor. I mean, I don't know what — you know, a lot of times plaintiffs will say if the jury doesn't like your plaintiff, you don't have a very good case. Maybe he was not a likable plaintiff. I don't know. But can we make those inferences as well? I think you can make those inferences. I don't think they're any more likely than the inferences that the jury misunderstood the instructions or that there was potential compromised verdict. But it should be clear that the jury intended to give him no money. Is it clear that they intended to give him no money? It's clear that they intended to award zero dollars. Zero dollars. It's also clear that they found that the defendant proximately caused the plaintiff's injury. And they heard testimony not only from plaintiff, the defendant. The plaintiff left on a stretcher. The defendant testified that he thought the plaintiff looked like he was in pain. The plaintiff testified as to the therapy he received, which Dr. Bernstein said was potentially necessary to alleviate the aggravation of preexisting condition. There's not evidence for that. They found that if they didn't like the plaintiff and they wanted to, I mean, let's just say they didn't like the plaintiff and they found, they filled in verdict for C even though they believe the plaintiff was injured and the defendant was negligent. Would that, we wouldn't be standing here. Would that be right? They were trying to do their duty. Maybe their problem was they went too far. I'm thinking about this as I'm listening to the arguments here. Okay? They could have, you know, filled out C. Okay? But it sounds like this was a conscientious jury and probably legitimate belief that the defendant was responsible for the accident. They weren't going to give the defendant a pass on the accident. But by the same token, they just didn't believe the defendant sustained any injuries as a result of the accident. Or the plaintiff sustained any injuries. And they wanted to make it clear that they thought the defendant was negligent. Okay? And how would you know that? They just say we find for the defendant. So are you saying that if you find the defendant is negligent, ergo you must find that there are damages? The instructions find that, say, okay, so instruction 20, 22, 2102 says that in order to find for the plaintiff, you must find that the plaintiff, that the defendant, that the plaintiff was injured and that the negligence of the defendant was approximately cause of that injury. I.P.I. 3001, which was also given, told the jury that if they decided in favor of the plaintiff, they must fix the amount of damages. And they fixed them at zero. The ‑‑ that's ‑‑ there is no evidence to support an award of zero dollars in damages. If the accident happened at work, if they believed that this guy was malingering and the evidence was established that this was a work‑related accident, it had nothing to do with the car accident, why couldn't they award him zero dollars? There's ‑‑ there's ‑‑ one is expert opinion. I think that's an expert opinion that Dr. Bernstein as well as our treaters addressed. And even Dr. Bernstein says that there is an aggravation of a preexisting condition. Without attacking that evidence, without attacking the medical expert opinions that this happened, the jury should not be free to disavow that this is ‑‑ Well, he just said that the doctor said it could have, didn't say it did. Dr. Bernstein also said that all of his opinions in it were held to ‑‑ at the beginning of this deposition were held to a reasonable degree of medical certainty. You know, he ‑‑ there's ‑‑ it's certainly his ‑‑ may I briefly continue? Sure. There's certainly no testimony by Dr. Bernstein conflicting with plaintiff's treaters that this was an aggravation for at least six months. There's ‑‑ he does not say ‑‑ he does not say, no, that opinion is wrong. He does not say ‑‑ he simply says, yes, it could be that. Could have been. Right. It would have subsided after six weeks. Correct. The jury didn't believe any of the witnesses. I agree, but this is an expert ‑‑ this is an aggravation. Injuries to plaintiffs, especially the causality of preexisting ‑‑ aggravation of preexisting conditions, that's, you know, these opinions are let in because they're beyond the ken of the juror, the average juror. For the jury to just ignore all the evidence that showed that there was at least an aggravation. There's an aggravation with no medical bills submitted, right? There's an ‑‑ but they had a testimony of all the treatment that he went through. It's not just medical bills. It's pain and suffering. It's lost a moral life to have to undergo the treatment that he won. He didn't just do physical therapy. He had injections. You know, for them to ignore the expert opinions was wrong. Thank you very much, Mr. Bletcher. And I want to thank both counsel as well for your arguments. And the matter will, of course, be taken under advisement and a written decision will be issued on due course. You stand adjourned for the day. Thank you.